[This decision has been published in *Ohio Official Reports* at 90 Ohio St.3d 540.]

CENTERIOR FUEL CORPORATION, APPELLEE, *v.* ZAINO, TAX COMMR., ET AL.,

APPELLANTS.

OES FUEL, INC., APPELLEE, *v.* ZAINO, TAX COMMR., APPELLANT.

[Cite as *Centerior Fuel Corp. v. Zaino*, 2001-Ohio-13.]

*Taxation—Personal property valuation—Fuel companies' lease of nuclear fuel rods to public utilities—Fuel companies for personal property tax valuation purposes can exclude the amounts they have capitalized on their books for the cost of funds borrowed to construct fuel rods.*

(Nos. 99-1987 and 99-1988—Submitted October 17, 2000—Decided January 17, 2001.)

APPEALS from the Board of Tax Appeals, Nos. 96-M-1468 and 96-M-1469.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 1} These two cases have been consolidated for review. The appellees, Centerior Fuel Corporation ("CFC") and OES Fuel, Inc. ("OES Fuel") ("fuel companies"), are nonutilities that lease nuclear fuel rods to public utilities that are part owners of either the Perry nuclear power plant in Lake County or the Davis-Besse nuclear power plant in Ottawa County. The tax years at issue are 1990-1995.

{¶ 2} CFC leases fuel rods to the Cleveland Electric Illuminating Company and the Toledo Edison Company. OES Fuel leases fuel rods to Ohio Edison Company and Pennsylvania Power Company.

{¶ 3} In order to raise the millions of dollars needed to pay for construction of new fuel rods, the fuel companies have entered into multiple borrowing arrangements with various banks and brokerage firms. While the materials for the fuel rods are being refined and fabricated, the fuel companies capitalize the interest costs they incur on the funds they have borrowed to finance the construction. The

interest costs the fuel companies incur after the fuel rods are placed in service are expensed.

{¶ 4} When the fuel companies filed their original or amended personal property tax returns for tax years 1990-1995, they excluded the capitalized construction interest cost from the book value of the fuel rods. However, after auditing the fuel companies, the Department of Taxation increased the valuation by adding back the capitalized construction interest cost. On review of petitions for reassessment, the Tax Commissioner affirmed the assessments. The fuel companies appealed to the Board of Tax Appeals ("BTA"), where the commissioner's assessments were reversed. The Tax Commissioner has appealed the BTA's decision in both cases.

{¶ 5} In addition to the Tax Commissioner's appeals, separate appeals have been filed in case No. 99-1987 by the auditors of Lake and Ottawa Counties.

{¶ 6} These causes are now before the court upon appeals as of right.

{¶ 7} The sole question in these cases is whether for personal property tax valuation purposes the fuel companies can exclude the amounts they have capitalized on their books for the cost of funds borrowed to construct fuel rods.

{¶ 8} R.C. 5711.21(C) provides that the true value of personal property leased to a public utility and used by it directly in the rendition of a public utility service "shall be determined in the same manner that the true value of such property is determined under section 5727.11 of the Revised Code if owned by the public utility."

{¶ 9} Former R.C. 5727.11(B) (now [A]) provides that the true value of the taxable personal property of an electric public utility "shall be determined by a method of valuation using cost as capitalized on the public utility's books and records."

{¶ 10} However, former R.C. 5727.11(G) (now [E]) provides that the true value "shall not include the allowance for funds used during construction or interest

2

during construction which has been capitalized on the public utility's books and records as part of the total cost of the taxable property."

{¶ 11} Combining these statutory provisions results in a method of valuation for the lessor fuel companies that is based on capitalized cost, but excludes from the capitalized cost the allowance for funds used during construction or the interest during construction that has been capitalized on the books as part of the total cost. Because the fuel rods are leased to the electric utilities they are to be valued as if they were owned by the electric utilities. Therefore, we must consider how the fuel rods would be valued if they were owned by the electric utilities.

{¶ 12} The Public Utilities Commission of Ohio requires electric utilities operating in Ohio to follow accounting procedures established by the Federal Energy Regulatory Commission ("FERC"). Ohio Adm.Code 4901:1-9-05. The phrase "allowance for funds used during construction" ("AFUDC") used in R.C. 5727.11(G) is an accounting term used by FERC in its regulations covering electric utilities. Title 18, C.F.R., Subchapter C, Part 101, Electric Plant Instructions, Section 3A(17). This court has described AFUDC as "an accounting mechanism which recognizes capital costs associated with financing construction. Generally, the capital costs recognized by AFUDC include interest charges on borrowed funds and the cost of equity funds used by a utility for purposes of construction." *Consumers' Counsel v. Pub. Util. Comm*. (1983), 6 Ohio St.3d 377, 378, 6 OBR 428, 429, 453 N.E.2d 673, 674. In their book Principles of Public Utility Rates (2 Ed.1988) 248, Bonbright, Danielson, and Kamerschen state, "The primary purpose of AFUDC is to capitalize the costs of financing construction, separate the effects of the construction program from current operations, and to allocate current capital costs to future periods when these capital facilities are producing revenue." The Federal Power Commission, the predecessor to FERC, stated the following reasoning for capitalizing construction interest costs: "Interest costs are actually incurred and can be viewed in the same manner as labor, materials, equipment and

other costs which are incurred and properly capitalized during construction." 40 F.R. 23322.

{¶ 13} The construction of nuclear fuel rods is the type of construction cost eligible for AFUDC. Title 18, C.F.R., Subchapter C, Part 101, Electric Plant Instructions, Section 3A(17) states that AFUDC applies to "construction work in progress plus nuclear fuel in process of refinement, conversion, enrichment, and fabrication."

{¶ 14} The Tax Commissioner states that the lessor fuel companies failed to prove the extent to which their construction interest cost would have been excludable as AFUDC if the fuel rods had been owned by the utilities. The commissioner also states that no calculation of AFUDC under the FERC formulas was made by either the fuel companies or the BTA. The commissioner misconstrues the purpose of R.C. 5727.11(G). The purpose of R.C. 5727.11(G) is to arrive at a valuation for utility property that is based on a capitalized cost that excludes all capitalized construction interest cost.

{¶ 15} The maximum amount of construction interest cost that an electric utility can capitalize as AFUDC is determined by mathematical formulas developed by FERC. Title 18, C.F.R., Subchapter C, Part 101, Electric Plant Instructions, Section 3A(17). Any construction interest cost incurred in excess of the AFUDC maximum, or in excess of any amount less than the AFUDC maximum that an electric utility actually capitalizes as AFUDC, is expensed. Thus, for the purpose of valuing an electric utility's own personal property, the exclusion of AFUDC from the total capitalized cost results in a valuation that is based on a capitalized cost that excludes all capitalized construction interest cost.

{¶ 16} Therefore to have its personal property valued in the same manner as the electric utility, the nonutility need not use the FERC formulas to calculate an AFUDC amount. When a nonutility lessor deducts all of its capitalized construction interest cost from the total capitalized cost of the property, it is

achieving the same result as that achieved by an electric utility that excludes AFUDC from a valuation that originally included only those interest costs allowed by AFUDC. As required by R.C. 5727.11(G), the resulting valuation for both the electric utility and the nonutility lessor is based on the capitalized cost that excludes the allowance for funds used during construction, whether denominated as AFUDC or capitalized construction interest cost.

{¶ 17} In the alternative, the commissioner states that the fuel rods should have been valued using a valuation method other than the statutory method based on capitalized cost. To support his position, the commissioner cites former R.C. 5727.11(B) (now [A]), which provides, "If the commissioner finds that application of this [statutory] method will not result in the determination of true value of the public utility's taxable property, he may use another method of valuation." In *Texas E. Transm. Corp. v. Tracy* (1997), 78 Ohio St.3d 83, 86, 676 N.E.2d 523, 525, we affirmed an alternate valuation, stating that "where rigid application of the statute would be inappropriate, the presumption of value must yield to other competent evidence reflecting true value." However, in this case the Tax Commissioner presented no evidence to show that the application of the statutory measure of value was inappropriate.

{¶ 18} Appellants Edward Zupancic, the Auditor of Lake County, and James Snider, the Auditor of Ottawa County, filed similar notices of appeal. In their appeals they contend that CFC should not have been able to exclude the construction interest costs because these costs were reimbursable.

{¶ 19} The auditors' contention is contrary to R.C. 5727.11(G) (now [E]). The relevant point is that these construction interest costs were capitalized by CFC. If CFC is to be treated the same as an electric utility, then the capitalized construction interest cost cannot be included in the capitalized cost for valuation purposes.

**{¶ 20}** Accordingly for the reasons set forth above, we find the decisions of the BTA to be reasonable and lawful, and they are hereby affirmed.

*Decisions affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MCMONAGLE, J., concurs in judgment.

TIMOTHY E. MCMONAGLE, J., of the Eighth Appellate District, sitting for COOK, J.

—————————

*Squire, Sanders & Dempsey, L.L.P., Bebe A. Fairchild, Abby R. Levine* and *David J. Young,* for appellees.

*Betty D. Montgomery,* Attorney General, and *James C. Sauer*, Assistant Attorney General, for appellant Thomas M. Zaino, Tax Commissioner of Ohio.

*Charles E. Coulson,* Lake County Prosecuting Attorney, *Michael P. Brown* and *James R. Dugan,* Assistant Prosecuting Attorneys, for appellant Edward H. Zupancic, Lake County Auditor.

*Mark E. Mulligan,* Ottawa County Prosecuting Attorney; *Baumgartner & O'Toole, Kenneth S. Stumphauzer* and *Daniel D. Mason*, for appellant James Snider, Ottawa County Auditor.

—————————