DECISION AND JUDGMENT ENTRY
{¶ 1} In this appeal from a judgment of the Lucas County Court of Common Pleas, appellant, Chris Cathcart, was found guilty of: (1) one count of aggravated murder with a firearm specification in violation of R.C. 2903.01(B) and 2941.141; (2) one count of aggravated robbery with a firearm specification in violation of R.C. *Page 2 2911.01(A)(1) and 2941.141; and (3) seven counts of aggravated kidnapping, each with a firearm specification, in violation of R.C.2905.01(A)(2) and 2941.141. All are felonies of the first degree.
 {¶ 2} Appellant was sentenced to life in prison with the possibility of parole after 20 years on Count 1, the aggravated murder charge, and a mandatory and consecutive three years in prison on the firearm specification on this charge. He was sentenced to a period of ten to 20 years on Count 2, the aggravated robbery charge with a mandatory, consecutive three years in prison on the firearm specification. These counts were ordered to be served consecutively to Count 1. As to Count 3, the kidnapping charges, appellant was ordered to serve a period of five to 25 years on each count to be served concurrently to each other and a mandatory, consecutive three years for each firearm specification with the sentences imposed for the kidnappings to be served concurrent to each other, but consecutive to Counts 1 and 2.
 {¶ 3} Appellant appeals his conviction and sets forth the following assignments of error:
 {¶ 4} "The defendant-appellant's due process rights were violated when the trial [sic] when it admitted `other acts' evidence pursuant to Evid.R. 404(B) when the danger of unfair prejudice to defendant appellant outweighed the probative value of such evidence pursuant to Evid.R. 403.
 {¶ 5} "The trial court errered [sic] when it failed to grant defendant-appellant's motion for acquittal pursuant to Crim.R. 29. *Page 3 
 {¶ 6} "The convictions of defendant-appellant were against the manifest weight of the evidence."
 {¶ 7} Testimony at appellant's trial provided the following facts relevant to the disposition of appellant's second and third assignments of error. Any facts necessary to the determination of appellant's first assignment of error shall be set forth within the body of that assignment.
 {¶ 8} On Sunday, April 30, 1995, the Pacific Crab House, a restaurant located in Maumee, Lucas County, Ohio, closed its doors to customers at about 10:00 p.m. The staff remained in the restaurant to "clean up" and get ready for the next day's business. Included in that group at the restaurant that night were Craig Tammarine, the bartender; Andrea Carol, now known as Andrea Wilhelm, the manager that night; Andrea's then boyfriend, Richard Wilhelm; Amy Henry, now known as Amy Malek, a waitress, and her boyfriend, Sam Parker; Dana Verstraete, another waitress; and Khary Phenix and Larry Loose, who were both dishwashers. Larry Loose was only there because another dishwasher failed to come in that night. Appellant had been employed as a dishwasher at the restaurant, but was fired.[1]
 {¶ 9} The door through which employees exit the restaurant is located at the rear of the building. On April 30, 1995, two men in black or dark blue, hooded sweatshirts, and wearing black or dark blue bandannas over the lower half of their faces came through *Page 4 
that open rear door. Only the two dishwashers were in the kitchen area. One of the gunmen put his arm around Phenix's neck and pointed a gun to his head. At that point, Larry Loose walked through a doorway into the kitchen, and the robber pointed his firearm at him. Loose asked the gunman, "Why are you pointing a gun at me?" The gunman shot Loose in the neck and left him lying on the kitchen floor while he moved Phenix to the men's restroom. Loose died as a result of the gunshot wound.
 {¶ 10} The other gunman ran into the area where the bar was located. Dana was walking toward the man, was struck in the face, and thrown to the floor. The remaining five people in that area were also ordered to lie on the floor. The gunman took Andrea's keys and her cellular phone. Eventually, he moved five of the people in the bar area to the men's restroom where they were forced to lie face down on the floor. While they were being moved to the bathroom, Amy heard the sound of a gunshot[2] coming from the kitchen. At some point, Phenix was also brought to the men's restroom.
 {¶ 11} Andrea, who was the only person in the building who knew how to open the restaurant's safe, was first forced to open the cash register in the bar by one of the gunmen. He then took Andrea, with a gun pointed to her head, to the office and made her open the safe. The proceeds from the restaurant's business on Friday, Saturday, and Sunday were removed by the gunman. *Page 5 
 {¶ 12} In the meantime, the other gunman was guarding the rest of the staff in the men's restroom. Craig Tammarine was shot in his right hip because he did not move quickly enough when he was told to lie face down on the floor. Andrea was brought back to the restroom after she helped the robbers obtain the money in the safe and cash register.
 {¶ 13} Before the gunmen left the restaurant they destroyed every telephone in the building, including Carol's cellular phone. After their departure, the employees waited for a long time in the bathroom. Then everyone, including Tammarine, ran out the rear door looking for the nearest place that had a telephone. They called 911 and the Maumee police came to the restaurant. Craig was taken by ambulance to the hospital.
 {¶ 14} Amy, Dana, and Craig provided the same description of their captor — African-American, heavy set, light-skinned, and with a wide nose. In fact, Craig, who testified that he never worked the same hours as appellant at the restaurant and did not know him, identified appellant in a photo array in 1996 as the individual who shot him. Craig also recognized appellant on television in 1997, when appellant was being brought into a courtroom as a defendant in another robbery-murder case. In 1997, Richard identified both appellant and Madrigal in a photo array as the men who robbed the Pacific Crab House on April 30, 1995.
 {¶ 15} At appellant's trial, Khary Phenix testified that he, appellant, and Madrigal planned and participated in the robbery of the restaurant. For his part, Phenix propped the rear door of the restaurant open with a rug. He then continued to wash dishes. Some *Page 6 
time later, he turned and saw "a barrel of a gun in my face." Phenix identified the gunman as Jamie Madrigal and as the individual who shot Larry Loose. Madrigal then grabbed Phenix and took him to the men's restroom where Phenix joined everyone who had been in the bar area. Phenix recognized appellant as the gunman who was already in the restroom. Phenix did not know whether it was appellant or Madrigal who shot Craig Tammarine. Phenix further testified that appellant and Madrigal later gave him $300 or $400 as his share of the funds taken in the robbery.
 {¶ 16} In his first assignment of error, appellant contends that his due process rights were violated when the trial court, over appellant's objection, admitted "other acts" evidence pursuant to Evid.R. 404(B). Appellant maintains that the unfair prejudice to appellant outweighed its probative value under Evid.R. 403.
 {¶ 17} A trial court has broad discretion in allowing the admission of evidence. State v. Maurer (1984), 15 Ohio St.3d 239, 265. An appellate court will not disturb evidentiary rulings absent an abuse of discretion that produces a material prejudice to the aggrieved party. State v.Roberts, 156 Ohio App.3d 352, 2004-Ohio-962,¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in reaching its ruling.State v. Adams (1980), 62 Ohio St.2d 151, 157 (citations omitted).
 {¶ 18} Other acts evidence is admissible if it tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B); R.C. 2945.59. Evid.R. 404(B) allows the admission of "other acts" evidence if it *Page 7 
is "related to and share[s] common features with the crime in question * * *." State v. Lowe (1994), 69 Ohio St.3d 527, paragraph one of the syllabus. "Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404[B]."State v. Jamison (1990), 49 Ohio St.3d 182, syllabus.
 {¶ 19} In the instant case, appellant's trial counsel attempted to show that Cathcart was not one of the perpetrators of robbery and murder at the Pacific Crab House by asking questions that might implicate another individual known by both appellant and Jamie Madrigal in that crime. Thus, the state offered evidence of a robbery and murder that occurred in April 1996, one year after the similar robbery and murder at the Pacific Crab House.
 {¶ 20} In the 1996 case, Jamie Madrigal went to appellant's house and told him that he wanted to rob a Kentucky Fried Chicken ("KFC") where he, meaning Madrigal, had previously worked. Cathcart had never worked at that particular restaurant, but had, at one time, been an employee of another KFC. Madrigal, with Cathcart, drove to the KFC; Cathcart stayed in the vehicle. Madrigal went into to the KFC, held the employees at gunpoint, and made them lie on their stomachs on the floor while asking them which one was the manager. This was done because he needed someone who knew the combination of the safe at the restaurant. When Misty Fisher, the 18-year-old woman who finally admitted that she was the manager, could not open the safe, Madrigal shot and killed her, and fled the scene with Cathcart. *Page 8 
 {¶ 21} We find that the trial court did not abuse its discretion in allowing this "other acts" evidence to show identity because of the common features between both crimes. Madrigal and Cathcart participated in both crimes. Because appellant and Madrigal had each worked at both the Pacific Crab House and at KFCs, they were familiar with the layout of each restaurant and the fact that the restaurants' proceeds were kept in a safe. Both managers were ordered to open the safe while the rest of the employees were face down on the floor, and Jamie Madrigal shot and killed an employee during each robbery. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 22} Appellant's second assignment of error urges that the trial court erred in denying his motion for an acquittal. Appellant claims that the trial court erred in failing to grant his motion because the state failed to prove that he "purposely" caused the death of another during the commission of a kidnapping or robbery as required by R.C.2903.01(B).
 {¶ 23} A trial court's decision to deny a Crim.R. 29(A) motion for acquittal based upon the sufficiency of the evidence will be upheld if, construing the evidence in a light most favorable to the state, any rational fact-finder could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. A verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact. State v.Dennis, 79 Ohio St.3d 421, 430, 1997-Ohio-372. *Page 9 
 {¶ 24} In the present case, appellant was convicted as a complicitor on the count of aggravated murder. R.C. 2923.03(A)(2) defines "complicity" as: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." To "aid and abet" is "`[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.'" State v. Johnson (2001), 93 Ohio St.3d 240, 243,2001-Ohio-13, quoting Black's Law Dictionary (7th Ed.1999) 69. A conviction for complicity by aiding and abetting is shown by evidence demonstrating that a defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." Id. at the syllabus. Evidence of aiding and abetting may be shown by either direct or circumstantial evidence, and the sharing in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed. State v. Lett,160 Ohio App.3d 46, 2005-Ohio-1308,¶ 29.
 {¶ 25} Aggravated murder, as set forth in R.C. 2903.01(B), reads: "No person shall purposely cause the death of another * * * while committing or attempting to commit * * * aggravated robbery * * *." R.C.2911.01(A)(1) sets forth the elements of aggravated robbery as follows: "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense shall * * * have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * * ." Finally, a criminal act is done "purposely" when it *Page 10 
is the defendant's "specific intention to engage in conduct of that nature." R.C. 2901.22(A).
 {¶ 26} As applied to this cause, testimony at trial established that, during the course of an aggravated burglary, Jamie Madrigal, with the specific intention to shoot Leonard Loose in the neck caused his death. Appellant, who was also carrying a gun, aided in the planning of the aggravated robbery, was present at the time, and supported and assisted Madrigal by forcing the Pacific Crab House employees to lie face down on the floor. Appellant shared in the proceeds of the aggravated murder/aggravated robbery, kept quiet or lied about the offenses committed at the Pacific Crab House for a number of years, and engaged in an almost identical offense with Madrigal approximately one year later. Therefore, we conclude that in construing this evidence in a light most favorable to the state, any rational fact-finder could have found the essential elements of complicity to commit aggravated murder proven beyond a reasonable doubt. Accordingly, appellant's second assignment of error is found not well-taken.
 {¶ 27} In his third assignment of error, appellant contends that his convictions are against the manifest weight of the evidence due to the trial court's ruling on "other acts" evidence and the lack of identification evidence linking appellant to the Pacific Crab House "incident."
 {¶ 28} In determining whether a verdict is against the manifest weight of the evidence, this court sits as a "thirteenth juror." State v.Thompkins (1997), 78 Ohio St.3d 380, 387. Thus, we review the entire record, weigh the evidence and all reasonable *Page 11 
inferences, and consider the credibility of witnesses. Id. In resolving conflicts in the evidence, we must determine whether the finder of fact "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Nonetheless, this court must keep in mind that it is the trier of fact's duty to determine the credibility of a witness; accordingly, our ability to consider credibility is limited. State v. Reynolds, 10th Dist. No. 3692, 2004-Ohio-3692, ¶ 13 (citation omitted).
 {¶ 29} We have already determined that the trial court did not abuse its discretion in admitting "other acts" evidence pursuant to Evid.R. 404(B). As to the second issue raised by appellant under this assignment of error, he asserts that "several" witnesses testified that they could only see the gunmen's eyes because their faces were covered from the nose down; he, therefore, argues that witness testimony identifying him as the second gunman was "shaky," that is, was not credible.
 {¶ 30} Appellant fails to note that Amy, Dana, and Craig were able to provide a general description of appellant and that it was only Dana who thought the second gunman (appellant) had a dot in the color of one eye. Indeed, both Craig and Richard were able to identify appellant in a photo array as that gunman. Moreover, Khary Phenix, who was also an accomplice in the aggravated murder/aggravated robbery that occurred at the Pacific Crab House identified appellant and Jamie Madrigal as the two gunmen. The jury viewed and heard all of the witnesses at trial, and found the testimony of those witnesses with regard to identification credible. Consequently, we conclude that the jury, *Page 12 
that is, the finder of fact, did not clearly lose its way and create such a manifest miscarriage of justice that appellant's conviction must be reversed and a new trial ordered. Accordingly, appellant's third assignment of error is found not well-taken.
 {¶ 31} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Singer, J. and Osowik, J., concur.
[1] Jamie Madrigal, who was later identified as the other gunman involved in the aggravated robbery-aggravated murder at the Pacific Crab House was also a dishwasher at the restaurant.
[2] Dana, Andrea, and Richard testified that they heard the sound of a gunshot or "some kind of bang" while they were lying on the floor in the bar area. *Page 1